UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREGORY LEVINE,<br><br>    Plaintiff,<br><br>v.<br><br>BANC ALT LLC D/B/A CHECK PROS AND BRUNSWICK BANK & TRUST COMPANY<br><br>    Defendants. | Civ. No. 18-6400 (KM) (CLW)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

This matter comes before the court on motions for summary judgment filed by both sides. The case arises from the cashing by Check Pros of a check allegedly stolen from plaintiff Gregory Levine.

Bank Alt LLC d/b/a Check Pros ("Check Pros") and Brunswick Bank & Trust Company ("Brunswick Bank") move for summary judgment on Gregory Levine's UCC and common-law conversion claims. (DE 52) Defendants seek an order dismissing Counts 1 and 3, Levine's common-law conversion claims, as duplicative of the UCC claims. As to Count 2, Check Pros claims that it was a holder in due course of a stolen check, and therefore is not liable to Levine under the UCC. (*Id.*) As to Count 4, Brunswick Bank moves for summary judgment because it acted as an intermediary and therefore cannot be liable under the UCC in connection with the negotiation of the check.

Plaintiff Levine moves for summary judgment on his UCC conversion claim against Check Pros, arguing that the check at issue was indisputably stolen and that Check Pros failed to follow commercially reasonable practices. (DE 59) Therefore, he says, Check Pros was not entitled to enforce the check.

The legal arguments on these motions for summary judgment are similar to those on the defendants' prior motion to dismiss, but of course are now

1

supplemented by a factual record. Familiarity with my prior opinion on the motion to dismiss (DE 28) is presumed.

For the reasons explained below, I will grant defendants' motions for summary judgment with respect to Counts 1, 3, and 4. Levine's motion for summary judgment on Count 2 is denied.

I. **Summary**[1]

On January 2, 2018, just prior to undergoing knee surgery, Gregory Levine came into possession of a check in the amount of $253,023.04, made out to himself as payee, representing his share of the proceeds from the sale of his parents' house. (DE 62-12 ¶ 1) The drawer is Albert B Levine Rev Inter Vivos Trust. (*Id.*) The drawee bank is Wells Fargo Bank, N.A. (*Id.*) Levine asserts that upon receiving the check, he placed it in a desk drawer at his office. (DE 59-13 ¶ 3) The following day, January 3, 2018, Levine underwent knee surgery.

At some point, an individual named Skippy Ely[2] came into possession of the check. Levine states that he does not know Mr. Ely, and asserts that the unrebutted facts establish that the check was stolen by Ely. (L.MSJ at 6–7) Defendants point out that the only evidence supporting Levine's account is his own *post hoc* testimony, as Levine did not file a police report at the time, nor did he log the alleged theft in the records kept at his business. (*Id.*)

---

[1] For ease of reference, the briefs will be cited as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated.

DE = Docket entry number in this case;

D.MSJ = Defendants' moving brief (DE 52-11);

L.Opp = Levine's opposition brief (DE 60);

D.Reply = Defendants' reply brief (DE 61);

L.MSJ = Levine's moving brief (DE 59-14);

D.Opp = Defendants' opposition brief (DE 62-13);

L.Reply = Levine's reply brief (DE 11).

[2] Earlier filings and some of the documentary evidence in the case (*see* DE 59-8) spelled the name "Eli." My earlier opinion on the motion to dismiss did so as well. (DE 28)

2

On January 24, 2018, over three weeks after Levine received the check, Ely presented the check to Check Pros. (DE 52-1 ¶¶ 11-12) Check Pros is a check cashing business located at 785 Roosevelt Avenue in Carteret, New Jersey. (*Id.* ¶ 2) It is undisputed that Levine was not present in New Jersey at this time. Ely presented a copy of Levine's driver's license and social security number. (*Id.* ¶¶ 11-12) Check Pros ran various checks to verify the authenticity of the driver's license and social security number. (*Id.* ¶¶ 11–13) A Check Pros employee also communicated with Wells Fargo, which verified that the account associated with the check had sufficient funds. (*Id.*)

On January 24, 2018, however, Check Pros advanced Ely only $3,795.58, a nominal portion of the face amount of the check. (59-13 ¶ 18) Check Pros told Ely that he would need to present an affidavit stating that he was authorized to cash the check on behalf of Levine. (DE 52-1 ¶ 12)

On January 25, 2018, Check Pros received from Ely an affidavit which read as follows:

To whom it may concern,

On this day 1/25/2018, I Gregory Allen Levine authorize Skippy Eli to be able to receive access to all funds from JJJ&P Industries located at 785 Roosevelt Avenue, Carteret, New Jersey 07008.

(DE 59-8)

The affidavit (DE 59-8) does not refer specifically to the check at issue. It does not refer to Check Pros. JJJ&P Industries, Inc., the business referred to in the affidavit, was a check cashing business that was formerly operated by the managing member of Check Pros, Joseph Lopresti, under a different name (United Check Cashing) at a different address (805, not 785, Roosevelt Avenue). (DE 52-1 ¶ 2, 52-12 ¶¶4–5) The affidavit was notarized with a raised seal by a New York notary. (DE 52-12 ¶17) Levine notes that the date the document was notarized, January 24, 2018, is one day before the date Levine purportedly signed it, January 25, 2018. (DE 59-8)

3

On January 25, 2018, Brunswick Bank released the proceeds of the check to the account maintained at Brunswick by Check Pros.³ (DE 59-13 ¶ 21) Check Pros then waited five business days, until January 30, 2018, and then disbursed the remaining $244,167 to Ely. (*Id.* ¶ 22)

The factual submissions regarding the allegedly forged indorsement, the theft of the check, and Levine's reporting of the theft are as follows.

It was not until approximately January 27, 2018, when he returned to work, Levine testified, that he discovered that the check was missing from his desk drawer. (DE 59-13 ¶¶ 4–6) Because the check had been in a locked office with limited access, Check Pros alleges that "plaintiff's claim of theft could not be believed by the rational finder of fact." (DE 52-1 ¶ 26)

Defendants assert that Levine unreasonably delayed reporting the check stolen. (D.MSJ at 14–15; D.Reply at 7) Levine testified that when he discovered the check missing, he and his sister immediately went online and discovered that it had been cashed. (DE 62 ¶ 23, citing DE 62-6 (Levine Dep. at 76)) Subpoenaed records from Wells Fargo confirm that one of three authorized users went online to view the account for approximately two minutes on January 26, 2018. (DE 62¶ 23; DE 62-10 at 4)

It was not until sometime in mid-February that the police were alerted that the check had been stolen. (DE 52-8 at 5–6) Levine's brother first notified the bank of the problem sometime in the first ten days of February, 2018. (DE 62 ¶24, citing DE 62-6 (Levine Dep. at 98)) It was not until February 9, 2018, that Levine himself went to the bank and submitted an "affidavit of check fraud," claiming that his indorsement was forged. (DE 52-1 ¶ 18; DE 52-8 at 2)

The check was indorsed on the back with what purports to be Levine's signature. (DE 59-2 at 2) On this issue, Levine's testimony was somewhat equivocal. He initially testified that when asked by the investigator at Wells

---

3   Check Pros and Brunswick Bank have a contractual agreement whereby Check Pros deposits its checks with Brunswick Bank, which obtains payment on negotiable instruments from the drawee banks and deposits the funds into the Check Pros account. (L.Opp at 2)

4

Fargo if he signed the check, he "said no. I said actually it looks like my signature, but it can't be my signature on the back of the check." (DE 62-6 (Levine Dep. at 112)) Then, when shown the original check at his deposition, he acknowledged that the signature "has to be mine, the way 'Gregory' is" (*id.* at 122), and that the signature "looks just like" his signature. (*Id.* at 124) Attempting to explain, Levine testified that "I know I did not sign the back of a check, because if I had I would then go right to the bank"—*i.e.*, it would not have been his usual practice to indorse a check and leave it in a drawer. (*Id.* at 124) He then testified that he did not recall signing the check. (*Id.* at 125–126)

On April 12, 2018, Levine filed the complaint in this action. Count 1 of the complaint asserts a common-law conversion claim and Count 2 asserts a claim under the UCC (N.J. Stat. Ann. § 12A:3-420), both against Check Pros. Counts 3 and 4 assert parallel claims against Brunswick Bank.

On May 8, 2018, Check Pros moved to dismiss the complaint or in the alternative for summary judgment. (DE 6) On June 4, 2018, Levine opposed the motion to dismiss and filed his own motion for summary judgment. (DE 16)

On September 25, 2018, I denied defendants' motion to dismiss in a written opinion. (DE 28) The parties' motions for summary judgment I denied without prejudice pending further discovery. Discovery proceeded.

In June 2019, the parties filed competing motions for summary judgment. (DE 52, 59) In July 2019, the parties filed oppositions and replies. (DE 60, 61, 62, 63) The summary judgment motions are thus fully briefed.

## II. Discussion

### a. Legal standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the

5

light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).

Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

That the matter comes before the court on cross-motions for summary judgment does not affect the analysis:

> This [Rule 56] standard "does not change when the issue is presented in the context of cross-motions for summary judgment." [quoting *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987)]. When both parties move for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 (3d ed. 2016).

*Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) That one of the cross-motions is denied does not imply that the other must be granted. *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 85 F. Supp. 3d 785, 794 (D.N.J. 2015). Rather, "[i]t is well settled that cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon the facts that are not genuinely disputed." *Manetas v. Int'l Petroleum Carriers, Inc.*, 541 F.2d 408, 413 (3d Cir. 1976).

### b. Motion for summary judgment by Check Pros on the UCC claim (Count 2)

Check Pros moves for summary judgment on Count 2, Levine's statutory claim under New Jersey's version of the Uniform Commercial Code, see N.J. Stat. Ann. § 12A:3-420.[4]

Check Pros argues that it cannot be liable for payment over a forged indorsement because Levine does not forthrightly or unequivocally deny that he indorsed the check. (D.MSJ at 19-25) I bypass that argument in favor of the more substantial one, i.e., that the check was stolen.

Check Pros argues that Levine's testimony about the theft of the check is "too incredible to be believed by the rational finder of facts." (D.Reply at 3–4.) Check Pros further argues that even if the check was stolen, it acted in good faith and acquired the status of a holder in due course by transfer of the check. (Id.) Check Pros had prior dealings with Ely, who occasionally had bounced a check but always made good, and therefore had no reason to doubt that anything was amiss when he presented another check for payment. This, coupled with the other documentation presented to Check Pros, including a

---

[4] 12A:3-420. Conversion of instrument

a. The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

b. In an action under subsection a. of this section, the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument.

c. A representative, other than a depositary bank, who has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable in conversion to that person beyond the amount of any proceeds that it has not paid out.

N.J. Stat. Ann. § 12A:3-420.

copy of Levine's driver's license and social security number, says Check Pros, cuts off its liability to Levine. (*Id.*)

Levine replies that Check Pros did not follow commercially reasonable practices when it accepted the check and affidavit presented by Ely. (L.Opp at 15–18). The plain text of the affidavit, says Levine, should have put Check Pros on notice that the affidavit and check were stolen or falsified in some manner. (*Id.*) Levine points to (1) the date of the signature on the affidavit being a day later than the notarization; (2) the notarization occurring in New York despite the reason for Levine's absence, *i.e.*, his disability and residence in Florida; (3) the affidavit's not mentioning the relevant check; and (4) the affidavit's reference to "JJJ&P," an entity separate from Check Pros. (*Id.* 8–11,16–17) These indicators, Levine argues, undermine the claim that Check Pros acted in the good faith belief that the affidavit established the check's legitimacy. Levine adds that Check Pros failed to confirm Levine's disabled status, and therefore failed to comply with the Check Casher's Regulatory Act of 1993. (*Id.* 17–18) Finally, Levine argues more generally that the check was stolen and that therefore Check Pros could not have been a holder in due course. (*Id.* at 14).

The Uniform Commercial Code protects the rights of a holder in due course. A person takes a check subject to the property rights of another unless that person is a "holder in due course." A holder in due course is one who takes an instrument for value, in good faith, and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. N.J. Stat. Ann. § 12A:3-302. If an individual qualifies as a holder in due course, the instrument is taken free from all claims to it on the part of any person and all defenses of any party to the instrument with whom the holder has not dealt, with certain stated exceptions. *Id.* § 3-305.

In an action concerning instruments, "the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the

9

signature is presumed to be authentic and authorized." *Id.* § 3-308. "If the validity of signatures is admitted or proved and there is compliance with subsection a. of this section, a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under N.J.S. 12A:3-301, unless the defendant proves a defense or claim in recoupment." *Id.*

The essential question here is whether Check Pros took possession of the check in "good faith" so as to entitle it to be treated as a holder in due course. N.J. Stat. Ann. § 3-305(c); *see also id.* § 3-420(c). Good faith is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing." *Id.* § 12A:3-103(a)(4). Honesty in fact "is determined by looking to the mind of the particular holder" and such a determination is typically "reserved for the trier of fact." *Valley Nat. Bank v. P.A.Y. Check Cashing*, 378 N.J. Super. 406, 422 (Law. Div. 2004), *aff'd*, 378 N.J. Super. 234 (App. Div. 2005).

When the party at issue is a check casher, the reasonable commercial standards of fair dealing are those that govern that regulated industry. For example, "[a]s a check cashing entity, [a party] is licensed and regulated and must adhere to the provisions of The Check Casher's Regulatory Act of 1993, N.J.S.A. 17:15A-30 to -52." *Kuhn v. Tumminelli*, 366 N.J. Super. 431, 443 (App. Div.) *certif. denied*, 180 N.J. 354 (2004). The CCR Act prohibits a check casher from cashing a check payable to a natural person for anyone other than that person, subject to certain regulatory exceptions. *See* CCR Act, "Prohibited Transactions," N.J. Stat. Ann. § 17:15A-47(b) ("No licensee, or any person acting on behalf of a licensee, shall ... [c]ash a check for anyone other than the payee named on the face of the check, except that the commissioner may, by regulation, establish exceptions to this prohibition.").

The single regulatory exception to that general "in-person" rule is that a check may be cashed for a person who presents from a disabled payee a written, notarized authorization containing a specific request that they cash the check:

> [N]o licensee or person acting on behalf of a licensee shall ... [c]ash a check for anyone other than the payee named on the face of the check, except where the presenter of the check to be cashed has obtained a written, notarized authorization from a disabled payee specifically requesting the presenter to cash the check.

N.J.A.C. § 3:24-5.7(a)(3).

In addition, when "suspicious circumstances" arise, reasonable commercial practices may require the casher to make follow-up inquiries. *Cf. Valley Nat. Bank v. P.A.Y. Check Cashing*, 378 N.J. Super. at 423 (failure to make inquiry when circumstances dictate is a failure to act in accordance with reasonable commercial standards) (quoting *Central, Inc. v. Cache Nat'l. Bank*, 748 P.2d 351, 353-54 (Colo. Ct. App. 1987)). Under this standard, a check cashing establishment "must use reasonable and proper methods to detect forgeries, but 'the tellers and bookkeepers . . . are not held to a degree of expertness which a handwriting expert possesses.'" *Travelers Indem. Co. v. Good*, 325 N.J. Super. 16, 22–23 (citation omitted).

The argument that Levine's tale of theft is too incredible to be believed need not detain the court. Under the governing summary judgment standard, credibility is an issue for the jury, not for determination by the court.

Moreover, in light of the discrepancies in the documentation presented by Ely, material issues of fact preclude summary judgment. Check Pros is correct that the relevant inquiry is not, as Levine contends, *merely* whether the check was in fact stolen. Rather, the court must consider what information was available to Check Pros at the time and whether Check Pros complied with commercially reasonable standards when presented with the check and affidavit.

A reasonable jury might permissibly conclude under the circumstances that the discrepancies and shortcomings in the affidavit, especially in light of the large value of the check, were obvious and suspicious—perhaps obvious enough to require a more thorough investigation. If so, then Check Pros might

11

not be found to have behaved reasonably and therefore might not be entitled to the rights of a holder in due course.

On the other hand, a jury might permissibly conclude that Check Pros did engage in "commercially reasonable" behavior when it required the affidavit, required that it be notarized, confirmed it had a raised seal, verified Levine's identity, verified the supporting documentation Ely presented, and contacted Wells Fargo. Levine's tardiness in reporting any theft, too, might be found to be a factor in finding Check Pros' actions to be reasonable. If so, then Check Pros might be found to have behaved reasonably and might be entitled to the rights of a holder in due course.

Because it remains disputed whether Check Pros took the check in good faith and in compliance with commercially reasonable practices, the motion of Check Pros for summary judgment with respect to Count 2 is denied.

### c. Levine's motion for summary judgment on the UCC conversion claim

Levine has filed a motion for summary judgment on his statutory conversion claim. (DE 59) The parties' briefing in support of (DE 59-14, 63) and in opposition (DE 62-13) to this motion substantively duplicates the arguments in connection with the motion of Check Pros for summary judgment. (DE 52, 60, 61) *See* Section II.b, immediately preceding. Because Check Pros, if entitled to the status of a holder in due course, would not be subject to the property rights of Levine, Levine's motion for summary judgment is denied.

### d. Defendants' remaining summary judgment arguments

Defendants further move for an order (1) dismissing Levine's common-law conversion claims as superfluous and (2) dismissing the claims against defendant Brunswick Bank.

#### i. Dismissal of common-law conversion claims

Defendants move for an order dismissing Counts 1 and 3, Levine's claims for common-law conversion.

Defendants assert that Levine's common-law conversion claims are displaced by the UCC, which provides a comprehensive and exclusive remedy. *See* N.J. Stat. Ann. § 12A:1-103. (D.MSJ at 7) In opposition to defendants' prior motion to dismiss, Levine relied on *Humberto Decorators, Inc. v. Plaza Nat Bank*, 180 N.J. Super. 170, 174 (App. Div. 1981), which permitted a plaintiff to pursue both a common-law and a UCC claim for conversion. Defendants urge that *Humberto* was decided under a prior version of the UCC, specifically former Section 12A:3-419-(1)(c). Current Section 3-420, they point out, "is a modification of former Section 3-419." The current statute, N.J. Stat. Ann. § 12A:3-420, is titled "Conversion of instrument," and expressly provides that "The law applicable to conversion of personal property applies to instruments." There can no longer be an argument, then, that the UCC provision does not encompass the essentials of a common law conversion claim.

Levine does not really dispute any of this. He argues, rather, that my previous opinion on the motion to dismiss constitutes the law of the case. There, he says, I ruled definitively that "Plaintiff's common-law conversion claim has not been supplanted by the UCC." (L.Opp at 23). Not quite. In my opinion dated September 25, 2018, I held as follows:

> In light of these authorities, I will not hold as a matter of law that the UCC entirely displaces the law of conversion. True, the conversion claim could turn out to be superfluous as the facts develop. I will permit it to remain in the case, however, as a backup to cover any set of facts not covered by the UCC.

(Opinion at 9, DE 28) Thus I explicitly stated that my ruling was not intended to bind the court indefinitely as law of the case; as I stated, in light of discovery "the conversion claim could turn out to be superfluous." (*Id.*)

It has turned out to be superfluous. Levine has not raised any fact or contention that would be covered by a common-law claim, but not by a UCC claim. Nor does Levine now dispute that the current statute, Section 12A:3-420, provides a complete remedy for the conversion that is claimed here. *See N.J. Lawyers' Fund for Client Prot. v. Pace*, 374 N.J. Super. 57, 62 (App. Div.

13

2005) (noting that "[c]onversion occurs" under N.J.S.A. 12A:3-420(a) "when [a] bank pays on [a] forged endorsement"); *Leeds v. Chase Manhattan Bank, NA*, 331 N.J. Super. 416, 422 (App. Div. 2000) (holding "a depository bank" is "strictly liable [under the UCC] for conversion on a forged or stolen instrument"). Nor does he identify any separate "agreement, undertaking, or contract" that might furnish a basis for an independent claim. *See Moore v. Bank of Am., NA*, No. CV 18-13727, 2019 WL 2281599, at *8 (D.N.J. May 28, 2019) (in the check collection arena, absent a special "agreement, undertaking or contract" between the parties, the sole remedy is that provided by the UCC, and common law claims are displaced).

Accordingly, I find that Levine's conversion claims are covered by the UCC. As a matter of law and in the interest of streamlining the case, the Defendants' motion for summary judgment dismissing Counts 1 and 3 as superfluous is granted.

### ii. Dismissal of Claims Against Defendant Brunswick Bank

Finally, defendants move for an order dismissing the claims against defendant Brunswick Bank. Brunswick Bank is named only in Count 3 (conversion) and Count 4 (N.J. Stat. Ann. § 12A:3-420). Defendants assert that Brunswick Bank cannot be held liable as a matter of law because it is no more than an intermediary that facilitated the mechanics of the transaction for Check Pros. (D.MSJ at 25; D.Reply at 2–3) As such, it was never in a position to breach any duties or warranties to Levine. (*Id.*) It is at most a stakeholder, possessing neither claims nor liabilities on its own account with respect to these funds. Levine fails to address this issue.

Brunswick Bank's role in the transaction was akin to that of an "intermediary bank" under the UCC. Brunswick helped facilitate or clear the transaction, but was not the depositary bank. And it is the depositary bank which, under the UCC, takes on the responsibility for paying out a check under a forged or unauthorized endorsement:

14

> The Uniform Commercial Code places responsibility for forged and unauthorized endorsements on depositary banks not only because they are the first solvent entity after the one who forged the endorsement, 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 18–4 at 209–10 (4th ed. 1995), but also because it follows that the depositary bank is in the best position of any other bank in the negotiation chain to guard against forged or unauthorized endorsements.

*Kuhn v. Tumminelli*, 366 N.J. Super. 431, 446 (App. Div. 2004). By extension, a bank in Brunswick's position should not be liable for processing a stolen check, because it only processed the transaction for Check Pros, the entity which actually dealt with Ely, who presented the allegedly stolen check.

Check Pros was in the best position of any entity to verify that Ely was entitled to enforce the instrument, and it had the responsibility to do so. Brunswick Bank was then entitled to rely on the warranty of Check Pros that it was entitled to enforce the check. *See Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.*, No. 03 CIV.7778(DLC), 2004 WL 1328215, at *6–7 (S.D.N.Y. June 15, 2004) ("Even if an intermediary bank is alleged to have processed checks that lacked all required endorsements, UCC § 3-206(2), Official Comment 3, provides that intermediary banks may 'disregard restrictive endorsements' because they 'handle checks in bulk and have no practicable opportunity to consider the effects of restrictive endorsements.' UCC § 3-206(2), Official Comment 3.").

Moreover, Levine "has not provided any reasons to conclude that [Brunswick Bank] did not in good faith follow reasonable commercial standards" when it deposited funds in the Check Pros account for the check. *See Kuhn v*, 366 N.J. Super. at 446. Indeed, Levine's brief in opposition hardly mentions Brunswick Bank.

Accordingly, Brunswick Bank's motion for summary judgment with respect to Counts 3 and 4 is granted, and those claims are dismissed as against Brunswick Bank.

### III. Conclusion

For the reasons set forth above, defendants' motion for summary judgment (DE 52) is **granted in part and denied in part**. Count 1, asserted against Check Pros, and Counts 3 and 4, asserted against Brunswick Bank, are dismissed with prejudice. Levine's motion for summary judgment (DE 59) is **denied.** Thus the case will go forward as to Count 2 as against Check Pros only. An appropriate order follows.

Dated: October 3, 2019

*Kevin McNulty*
**Kevin McNulty**
**United States District Judge**